UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YEYSON PEREZ VELASQUEZ,

                  Petitioner,

-against-

KRISTI NOEM, in her official capacity as Secretary, U.S. Department of Homeland Security; JUDITH ALMODOVAR, in her official capacity as Acting Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement; PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice; PAUL ARTETA, in his official capacity as the Orange County, New York Sheriff,

                  Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/22/2025_

25 Civ. 10338 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Yeyson Perez Velasquez, brings a petition for habeas corpus under 28 U.S.C. § 2241, seeking release from his ongoing detention by Immigration and Customs Enforcement ("ICE"), or, in the alternative, enforcement of an immigration judge's grant of a $6,000 release bond. *See* Pet. ¶¶ 1–3, 8, ECF No. 1. Perez Velasquez states that, on November 2, 2025, ICE detained him after a warrantless stop in Long Island, New York, *see* Pet. ¶ 4, and argues that his ongoing detention violates the Immigration and Nationality Act ("INA"), *id.* ¶¶ 93–97, and his Fifth Amendment right to due process of law, *id.* ¶¶ 98–104. For the reasons stated below, the Petition is granted. The Court orders Perez Velasquez's immediate release.[1]

---

[1] Having reviewed the Petition, the materials filed in support thereof, and the government's response, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243; *see also id.* (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require"). The Government does not contest any relevant facts. *Compare* Pet. *with* Resp. at 1–2, ECF No. 6.

**BACKGROUND**

On November 2, 2025, Perez Velasquez, a New York resident, was detained by ICE in the parking lot of a Long Island deli. *See* Pet. ¶¶ 26–28. While Perez Velasquez was walking to his car, a man dressed in "civilian clothing and a bulletproof vest" approached him, showed him a photograph, and asked him to identify the person in the picture. *Id.* ¶ 28. Perez Velasquez, who speaks limited English, did his best to convey that he did not know who the person was. *Id.* He then continued walking to his car, where a woman, also dressed in "civilian clothing and a bulletproof vest," approached him and asked him to identify an individual in another photograph. *Id.* He again attempted to communicate that he did not know who the person was. *Id.*

Perez Velasquez then entered his car, and the woman approached the driver's side window and instructed him, in Spanish, to lower his window. *Id.* ¶ 29. After Perez Velasquez could not identify individuals in yet more photographs that the woman showed him, the woman told him that he was under arrest. *Id.* When he asked her if she had an arrest warrant, she did not provide one and instead requested his identification. *Id.* Perez Velasquez presented his New York State learner's permit. *Id.* The woman then asked Perez Velasquez questions about his immigration status, which he declined to answer. *Id.* Perez Velasquez noticed that a sedan was blocking him from pulling out of his parking space and that a group of men were approaching his car. *Id.* Next, one of the men used a metal object to shatter Perez Velasquez's passenger-side car window, and the remaining officers pulled him out of his vehicle, threw him on the ground, and arrested him. *See* Pet. ¶¶ 28–30; Damaged Car Photo, ECF No. 1-3.

The individuals who seized Perez Velasquez did not inform him that they were ICE officers, did not produce a warrant, and did not provide a reason for his arrest. Pet. ¶ 30. Nor did ICE offer Perez Velasquez a bond hearing contemporaneous with his detention or make any

individualized determination that he was a danger or risk of flight in deciding to detain him. *See generally id*. Perez Velasquez is currently detained at the Orange County Correctional Facility in Goshen, New York, where he reports that he has yet to receive medical assistance for numerous physical symptoms related to his violent arrest. *Id.* ¶ 31.

The government represents that it "understands from ICE that Petitioner is a native and citizen of Guatemala who unlawfully entered the United States without inspection at an unknown date and time." Resp. at 1, ECF No. 6. The government does not state, however, that ICE had any knowledge of Perez Velasquez's immigration status prior to detaining him; indeed, Perez Velasquez's first interaction with immigration authorities appears to be his November 2 arrest. *See id.*[2]

On November 25, 2025, Perez Velasquez's attorney requested a bond hearing, which was held on December 4, 2025. Pet. ¶¶ 35–36. At that hearing, an immigration judge held that binding Board of Immigration Appeals ("BIA") precedent, *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 218 (BIA 2025), constrained him to hold that Perez Velasquez was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and was thus ineligible for release on bond. *See* Pet. ¶ 37. The immigration judge held, in the alternative, that if he did have jurisdiction to set a release bond under 8 U.S.C. § 1226(a), he would release Perez Velasquez on a $6,000 bond. *See* Pet. ¶ 37; Pet. Ltr. at 2–3, ECF No. 8; Bond Hrg. Tr. at 20:2–21:17, ECF No. 8-1.

Perez Velasquez filed the instant action on December 14, 2025, and it was assigned to the undersigned on December 15. *See* Pet. That same day, the Court issued an order staying Perez

---

[2] The government further states that Perez Velasquez has been charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) and that he has been served with a Notice to Appear. Resp. at 1. The government asserts that "ICE arrested [Perez Velasquez] pursuant to a signed I-200 (warrant)" but does not report when the I-200 was signed, does not claim that Perez Velasquez was served with the I-200 prior to his arrest, and has not produced the warrant for the Court. *Id.*

3

Velasquez's transfer or removal, ECF No. 4, and ordered the government to submit a letter identifying the statutory provisions justifying his detention and stating whether there is "any basis to distinguish this case from" *Gonzalez v. Joyce*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025), *Cuy Comes v. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491 (S.D.N.Y. Nov. 14, 2025), and *Cardenas v. Almodovar*, No. 25 Civ. 9169, 2025 WL 3215573 (S.D.N.Y. Nov. 18, 2025), a set of other cases in this district assessing similar or identical claims. *See* Order to Show Cause at 1, ECF No. 5.

By letter dated December 16, 2025, the government states that this case raises "materially identical claims" to the *Cuy Comes* case and is, therefore, "not materially distinguishable . . . for purposes of the Court's resolution of the primary legal issue presented, *i.e.*, the statutory authority for Petitioner's detention." Resp. at 2. The government does, however, contend that unlike the petitioner in *Cuy Comes*, Perez Velasquez could be afforded "adequate relief" by enforcement of the immigration judge's alternative bond order, rather than by unconditional release. *See* Resp. at 2, *Cuy Comes*, 2025 WL 3206491, at *6. The government otherwise "relies upon, and incorporates by reference, the legal arguments it presented in *Cuy Comes*" and asserts that the briefing in that case provides a sufficient basis for the Court to decide this matter. Resp. at 2.

In *Cuy Comes*, the Court considered: (1) whether the petitioner's detention was governed by 8 U.S.C. § 1225(b)(2)(A), which requires mandatory detention of certain noncitizens, or § 1226(a), which provides for discretionary detention; and (2) whether the circumstances of the petitioner's detention violated the Due Process Clause of the Fifth Amendment. *See* 2025 WL 3206491 at *2–6. *Cuy Comes* incorporated the reasoning of numerous other district court cases, holding that a petitioner who lives in the United States is subject to discretionary detention under 8 U.S.C. § 1226(a) and that Cuy Comes' detention violated due process. The Court now turns to

those questions as applied to this case, mindful that the government has identified no materially distinguishing feature of Petitioner's claim here.[3]

## DISCUSSION

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citation omitted). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* In analyzing Perez Velasquez's due process claim, the Court holds that (1) Perez Velasquez is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and (2) because he is instead subject to discretionary detention under § 1226(a), his detention under the circumstances present here violated his due process rights.[4] The government concedes that if the Court follows its decision in *Cuy Comes*, 2025 WL 3206491, the Court should grant the writ of habeas corpus. *See* Resp. at 2–3; *see also Perez Agustin v. Joyce*, No. 25 Civ. 10122, 2025 WL 3564494, at *2 (S.D.N.Y. Dec. 12, 2025).

I.    Basis of Detention

The government asserts that Perez Velasquez's detention is properly governed by 8 U.S.C. § 1225(b)(2(A), which requires mandatory detention for "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." *See* Resp. at 1–2. Perez Velasquez argues that "people arrested inside the United States generally fall within § 1226 [discretionary detention]

---

[3] Administrative exhaustion, which was at issue in *Cuy Comes*, is not at issue in this case because, unlike the petitioner in *Cuy Comes*, Perez Velasquez did request, and did, around one month after his initial detention, receive a bond hearing, where release was denied. *Cf. Cuy Comes*, 2025 WL 3206491, at *6.

[4] Because the Court agrees that Perez Velasquez's release is required because his due process rights were violated, the Court does not consider Perez Velasquez's other arguments. *See, e.g.*, Pet. ¶¶ 93–97 (arguing that the application of § 1225(b)(2) violates the INA).

for detention purposes," Pet. ¶ 74, and that, because Perez Velasquez was arrested inside the United States and was not "seeking admission" at the time of his arrest, his detention is governed by § 1226(a). "This Court need not spill much ink on the issue, as it agrees with the overwhelming weight of authority" and concludes that Perez Velasquez is detained under 8 U.S.C. § 1226(a); a contrary reading would be inconsistent with the statutory text. *Cardenas*, 2025 WL 3215573, at *2; *see Gonzalez*, 2025 WL 2961626, at *4; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025); *Cuy Comes*, 2025 WL 3206491, at *2–3; *Barco Mercado v. Francis*, No. 25 Civ. 6582, 2025 WL 3295903, at *13–14 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8–9 (7th Cir. 2025) (concluding that "Plaintiffs have the better argument on the current record" that § 1225(b)(2)(A) does not cover "any noncitizen who is unlawfully already in the United States").

II.   Due Process Required for § 1226(a) Detention

"At the outset, the Court rejects [any] assertion that [Perez Velasquez] is not entitled to due process under the Fifth Amendment and is instead limited only to the process provided by Congress." *Cuy Comes,* 2025 WL 3206491, at *4. Perez Velasquez is not, as the government purported in *Cuy Comes*, an "alien on the threshold of initial entry," Resp. Mem. at 12 (citation omitted),[5] but rather a noncitizen who had been inside the United States for some time before his apprehension. *See Cuy Comes*, 2025 WL 3206491, at *4. As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

---

[5] The Court will refer to the response memorandum submitted in *Cuy Comes*, which Respondents expressly incorporate by reference, *see* Resp. at 2, as "Resp. Mem." in this order.  *See* Resp. Mem., ECF No. 11 in *Cuy Comes v. DeLeon*, No. 25 Civ. 9283 (S.D.N.Y.).

As in *Cuy Comes*, 2025 WL 3206491, at *5, *Gonzalez*, 2025 WL 2961626, at *3, and *Perez Agustin*, 2025 WL 3564494, at *3, the government does not dispute that Perez Velasquez was detained "with no process at all, much less prior notice," "no showing of changed circumstances," and no "opportunity to respond." *Lopez Benitez*, 795 F. Supp. 3d at 498 (citation omitted); *see* Pet. ¶¶ 81–89; *see also* Resp. And, Respondents do not provide any indication whatsoever that an individualized determination of the need for detention was made prior to detaining Perez Velasquez, *cf.* Pet. ¶¶ 57–58, nor does it indicate that ICE had any basis to suspect that Perez Velasquez was even, in fact, unlawfully present in the United States prior to his detention. *See generally* Resp. For the reasons explained in *Cuy Comes*, 2025 WL 3206491, at *4–5, *Gonzalez*, 2025 WL 2961626, at *3, and *Lopez Benitez*, 795 F. Supp. 3d at 492–96, among other cases, the Court concludes that such process is required when detaining someone under § 1226(a), and, therefore, Perez Velasquez's due process rights were violated when he was "[]detained by immigration authorities with no deliberative process prior to, or contemporaneous with the detention." *Lopez Benitez*, 795 F. Supp. 3d at 498 (quoting *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *4 (S.D.N.Y. June 18, 2025)).

To the extent that the government argues that Perez Velasquez was detained pursuant to its discretionary authority, there is no valid exercise of discretion where "there is nothing to suggest that [the government] exercised any discretion *at all* in detaining [Perez Velasquez] . . . in contravention of the basic procedural requirements of § 1226(a)." *Cuy Comes*, 2025 WL 3206491, at *5 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 494–95). Nor is there any dispute that "ICE is required to adhere to the basic principles of due process when exercising its discretion under § 1226(a)." *Id.* (citing *Velasco Lopez*, 978 F.3d at 850–51). Because Perez Velasquez was "denied due process when ICE detained him . . . without first conducting an individualized assessment as

to his dangerousness or flight risk, or any kind of process at all sufficient to qualify as a valid exercise of discretion," the Court grants his petition. *Lopez Benitez*, 795 F. Supp. 3d at 496.

### III. Conditions of Release

Perez Velasquez seeks his immediate and unconditional release from custody. *See* Pet. at 26. The government disagrees, arguing that enforcement of the immigration judge's grant of $6,000 bond would provide "adequate relief" for the due process violation. Resp. at 2.

As discussed above, Perez Velasquez's due process rights were violated the moment that he was detained without notice or an opportunity to be heard, and without any individualized determination that he posed a danger to the community or a flight risk (or a determination that he was even, in fact, present in the United States unlawfully). *See Gonzalez*, 2025 WL 2961626, at *3 ("[D]etention . . . with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond, violates . . . due process." (citation omitted)); *Lopez Benitez*, 795 F. Supp. 3d at 492–93. Enforcing the immigration judge's bond holding would thus be insufficient to remedy the constitutional violation in this case, which stems from the procedures ICE used—or rather, the lack thereof—to detain Perez Velasquez in the first place. Indeed, as this Court has held, the custody re-determination in a bond hearing, "a hearing that occurs after ICE makes its initial decision to detain[,] . . . is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of [his] freedom." *Gonzalez*, 2025 WL 2961626, at *5 (quotation omitted). Because Perez Velasquez's detention failed to meet these procedural requirements—requirements necessary to protect the liberty foundational to our constitutional system—he must be released immediately, without conditions. *See also Velasco Lopez*, 978 F.3d at 851 (characterizing the "interest in being free from imprisonment" as "the most significant liberty interest there is").

8

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Perez Velasquez from government custody.

Additionally, Respondents must brief their authority, if any consistent with this Order, to (1) re-detain Perez Velasquez without a valid exercise of discretion; (2) deny bond to Perez Velasquez in any subsequent proceeding on the ground that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) absent a change in relevant circumstances; (3) invoke the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) in the event that Perez Velasquez is granted bond; or (4) impose additional conditions of release or burdens on Perez Velasquez's liberty. If, instead, Respondents confirm that they will take none of those steps with respect to Perez Velasquez without prior notice of at least one week provided to him and the Court, Respondents need not file such briefing. *See Quispe-Sulcaray v. Noem et al.*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025); *Perez Agustin*, 2025 WL 3564494, at *4.

By **December 23, 2025**, Respondents shall certify compliance with this Order by a public filing on the docket.

SO ORDERED.

Dated: December 22, 2025
New York, New York

_____
ANALISA TORRES
United States District Judge